FILED
2012 Jun-26  AM 11:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **LILLIE MAE HARNEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Civil Action No. CV-11-S-4103-NE** |
| | ) |
| **McCATUR, INC., d/b/a** | ) |
| **McDONALD'S,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION

Plaintiff, Lillie Mae Harney, *pro se*, commenced this action against her employer, defendant, McCatur, Inc., d/b/a McDonald's, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[1] Defendant filed a motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  Upon consideration of the motion and pleadings, the court determines that the motion to dismiss is due to be granted in part and denied in part.

### I.  MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a),

---

[1] *See* doc. no. 1 (Complaint); doc. no. 3 (Amended Complaint).

[2] Doc. no. 6.

which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the

2

complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations*, *a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief*.

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied).

When ruling upon a motion to dismiss, the court must assume that the well-pleaded facts set forth in the plaintiff's complaint are true. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (1994) (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable

3

inferences drawn favorably to Plaintiffs) in the complaint as true").  Accordingly, that which is set out in the following portions of this memorandum opinion as "the facts" for Rule 12(b)(6) purposes may, or may not, be the actual facts.  *See, e.g.*, *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006).

## II.  PLAINTIFFS' ALLEGATIONS

### A.    The Leniency Afforded the Pleadings of *Pro Se* Litigants

Plaintiff comes before this court representing herself, without the benefit of counsel:  *i.e.*, *pro se*.  "A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "the *pro se* plaintiff's complaint must meet the minimum requirements of presenting a viable claim."  *Hales v. City of Montgomery*, 347 F. Supp. 2d 1167, 1171 (M.D. Ala. 2004).

Plaintiff's initial complaint, like many complaints filed by *pro se* plaintiffs, failed to clearly articulate the claims she wished to assert.[3]  Accordingly, the court ordered plaintiff to file an amended complaint,[4] and she complied with that order in

---

[3] *See* doc. no. 1.

[4] Doc. no. 2.

a timely manner.[5]  The amended complaint presents plaintiff's claims in a more orderly fashion, but lacks much of the detail that is found in her EEOC charge, which was attached to the initial complaint only.[6]

An EEOC charge ordinarily is no substitute for a well-pleaded complaint.  There is no requirement that a plaintiff bring suit on the basis of every allegation made part of her EEOC charge; it is the judicial complaint that defines the contours of the lawsuit.  Even so, the court finds no reason to believe that plaintiff consciously chose not to bring some of her EEOC claims in this action.  On the contrary, it appears that she intends to bring all of the same claims lodge with the EEOC, but has merely failed to replicate in her complaint all of the details found in her administrative charge.  Given the leniency afforded *pro se* litigants, therefore, the court will use the factual allegations of plaintiff's EEOC charge to supplement the amended complaint.  *See Clark v. Huntleigh Corp.*, 119 F. App'x 666 (5th Cir. 2007) (reversing dismissal for failure to state a claim where the plaintiff's complaint "included only hints of claims but included no real factual or legal allegations" but finding that the EEOC charge attached to the *pro se* plaintiff's complaint "set out his race and age discrimination

---

[5] *See* doc. no. 3.

[6] Plaintiff attached her *original* EEOC charge to the initial complaint, which may explain why she did not attach a copy to her amended complaint, although the clerk of court provided her with a photostatic copy of the charge when she filed her initial complaint.

allegations").

## B.    Plaintiff's Allegations

Plaintiff, Lillie Mae Harney, is an African-American ("black") female.[7]  She began her employment with defendant, McCatur, Inc., d/b/a McDonald's, in November of 2007.[8]  She was assigned to work in "prep" at a McDonald's location in Decatur, Alabama, and performed her duties without complaint until March of 2008.[9]  At that time, plaintiff became ill and had to stop working.[10]  She did not return to work until July of 2008.[11]  During plaintiff's illness, Kim McClung assumed the role of "Store Manager" at the McDonald's.[12]  Upon plaintiff's return to work, she was reassigned from prep duties to work on the grill.[13]  The prep job was given to Windy McCutcheon, a white female.[14]  Plaintiff characterizes the prep job as a "better" assignment than the grill job.[15]

_____

[7] Doc. no. 1, at 9 (EEOC Charge).

[8] *Id.*

[9] Doc. no. 3 ¶ 4.1.  Plaintiff's amended complaint consists of her handwritten completion of the "General Complaint Form for Pro Se Litigants."  The factual allegations are presented in response to the fourth question on that form.  Plaintiff's factual statement extends to an extra page, and she has numbered the paragraphs of her allegations.  The number 4.1, used in this footnote, references plaintiff's paragraph number "1" in response to question 4 of the general complaint form.

[10] Doc. no. 3 ¶ 4.1.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] EEOC Charge.

[15] *Id.*

6

Plaintiff did not receive a raise in her hourly wage at any time between August of 2008 and August of 2011, at which point her pay was increased by five cents per hour.[16] At some undisclosed time, Windy McCutcheon and Lila Harvey, another white female, received a pay raise, even though they do the "same work" as plaintiff.[17] During 2009, McClung promoted five other employees, of unknown race, to the position of "Trainee."[18]  Plaintiff was not promoted, despite the fact that she had "seniority" over those who were.[19]

Veronica Tobert is a "Swing Manager" at the McDonald's location where plaintiff is employed.[20]  The complaint does not state Tobert's race; presumably, she is white.  At some point in 2010, Tobert had an altercation with one of her family members.[21]  She was describing that altercation to coworkers, and characterized that family member as a "nigger loving bitch!"[22] Tobert "scream[ed]" that epithet knowing

---

[16] Doc. no. 3 ¶ 4.1.

[17] EEOC Charge.  Plaintiff continued to do some of the prep tasks after she had been assigned to work on the grill.  *See* doc. no. 3 ¶ 4.2 ("I continued doing my pre[p] and grill job w/o a raise or a promotion.").

[18] Doc. no. 3 ¶ 4.2.

[19] *Id.*

[20] *See id.* ¶ 4.3; EEOC Charge.

[21] Doc. no. 3 ¶ 4.3.

[22] *Id.*  This court "do[es] not explicate this vulgar language lightly, but only because its full consideration is essential to measure whether these words and this conduct could be read as having created 'an environment that a reasonable person would find hostile or abusive.'" *Reeves v. C.H. Robinson, Inc.*, 594 F.3d 798, 803 (11th Cir. 2010) (en banc) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

that plaintiff was in her presence.[23]

At some unspecified point in time, but apparently before 2010, plaintiff complained to McClung about the fact that she was being treated differently than her white coworkers.[24]  McClung told her that she had not received a raise because she complained too much and had gotten into an argument with Tobert.[25]  In early 2010, plaintiff noticed that her work hours were declining.[26]  She was only being assigned to work twenty to thirty hours over each two-week pay period; in the past, she had worked forty to fifty hours per pay period.[27]  She alleged that the reduction in hours was retaliation for her complaint about the pay disparity.[28]  Plaintiff filed for unemployment benefits, but her hours were increased in order to destroy her eligibility for the benefits.[29]  At some point in 2011, presumably after receiving the five-cent raise in August, plaintiff received a ten-cent raise, but by then, her hours had been reduced to eleven to twelve per week.[30]

At some point in 2010, plaintiff asked McClung for a release form, so that she

---

[23] Doc. no. 3 ¶ 4.3.

[24] EEOC Charge.

[25] Doc. no. 3 ¶ 4.4.

[26] *Id.*

[27] *Id.*

[28] EEOC Charge.

[29] *Id.*

[30] Doc. no. 3 ¶ 4.4.

could transfer to a new McDonald's location in Decatur.[31]  McClung stated that she would not help plaintiff get the transfer release, because of plaintiff's poor job performance.[32]  She directed plaintiff to ask another manager for the release, despite the fact that, according to the employee handbook, the Store Manager is responsible for granting transfers.[33]  Plaintiff does not indicate whether she ever did receive the release.

McClung's refusal to help plaintiff obtain her transfer waiver is consistent with McClung's practice of refusing to communicate directly with plaintiff throughout McClung's supervision of her.[34]  McClung does not communicate with plaintiff "at all."[35]  Instead, McClung uses Swing Managers or other crew members as proxies to give instructions to plaintiff.[36]

## III.  DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

---

[31] *Id.* ¶ 4.5

[32] *Id.*

[33] *Id.*

[34] Doc. no. 3. ¶ 4.6.

[35] *Id.*

[36] *Id.*

9

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII also prohibits

retaliation against an employee "because he has opposed any practice made an

unlawful employment practice by [Title VII], or because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing [thereunder]." 42 U.S.C. § 2000e-3(a).

In her amended complaint, plaintiff stated that she seeks monetary and

injunctive relief for "discrimination, retaliation, [and] harassment."[37]  The amended

complaint includes three potential claims:  (1) a disparate treatment claim; (2) a hostile

work environment claim; and (3) a retaliation claim.  The court will address each of

those claims in turn.

The Supreme Court has held that, in considering a motion to dimiss, "it is not

appropriate to require a plaintiff to plead facts establishing a *prima facie* case" that

would be sufficient to satisfy the *McDonnell Douglas* framework that is often applied

at summary judgment.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).

Nonetheless, "the *prima facie* elements are not entirely irrelevant, and no plaintiff is

exempt from her obligation to allege sufficient facts to state all the elements of her

claim."  *Streeter v. FedEx Ground Package System, Inc.*, No. 6:12-cv-163-Orl-

22DAB, 2012 WL 717865, at *3 (M.D. Fla. Feb. 13, 2012).  Therefore, this court will

---

[37] *Id.* ¶ 5.

10

use the *prima facie* elements as a point of reference in discussing plaintiff's claims.

## A.    Disparate Treatment Claim

"A plaintiff establishes a prima *facie case* of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  Those three basic elements — membership in a protected class, an adverse employment action, and better treatment of a similarly situated employee outside the protected class — are not rigid, and courts have developed different sets of elements for specific theories of disparate treatment.  Plaintiff has alleged six theories of disparate treatment based on race discrimination.  Thus, the protected group to which she belongs is her race, black, and the first element of the *prima facie* case is satisfied.  The court will address the other elements of a disparate treatment claim with regard to each of her individual theories of discrimination.

### 1.    Reassignment

Plaintiff alleges that her prep job was taken from her and given to a white employee, Windy McCutcheon, and that the prep job is "better" than the grill job to which she was reassigned.[38]  That reassignment qualifies as an adverse employment

---

[38] EEOC Charge.

action, because it allegedly resulted "in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001).  McCutcheon is a similarly situated employee outside plaintiff's protected class, and she received better treatment than plaintiff; in fact she was awarded the job position that plaintiff had occupied prior to her absence from work due to illness. Thus, plaintiff has sufficiently pled a claim for disparate treatment discrimination on the basis of her reassignment from prep work to the grill, and McCutcheon's assignment to the prep job in her place.

### 2.    Pay discrimination

To present a *prima facie* case of race-based wage discrimination, a plaintiff must demonstrate that she was "paid less than a member of a different race was paid for work requiring substantially the same responsibility." *Pittman v. Hattiesburg Municipal School District*, 644 F.2d 1071, 1074 (5th Cir. 1981).[39]  "To make a comparison of plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Here, plaintiff has alleged that she was not awarded an increase in her hourly

---

[39] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

wages when two white employees, McCutcheon and Harvey, received raises.[40]  She further alleged that the three of them did "the same work."[41]  She has not, however, alleged that she was actually *paid less* than those employees.  The fact that they received a raise when she did not receive one does not, in itself, demonstrate that they were paid a greater wage than she was.  Plaintiff has not indicated what their respective wages were before or after the raises.  Without any allegation that her white coworkers were actually paid more than her for doing the same work, she cannot maintain a pay discrimination claim.  Rather than dismiss that claim at this juncture, however, the court will overrule this aspect of the motion to dismiss, without prejudice to renewal following discovery or other presentation of relevant evidence.

### 3.      Failure to promote

A failure to promote claim has four elements:  (1) the plaintiff is a member of a protected group; (2) the plaintiff applied for, and was qualified to fill, a position for which the defendant was accepting applications; (3) despite her qualifications, the plaintiff was rejected for the position; and (4) after her rejection, the employer *either* kept the position open, *or* filled it with a person outside plaintiff's protected class. *See, e.g.*, *Walker v. Mortham*, 158 F.3d 1177, 1179 n.2, 1185-93 (11th Cir. 1998);

---

[40] EEOC Charge.

[41] *Id.*

*Crawford v. Western Electric Company, Inc.*, 614 F.2d 1300, 1315 (5th Cir. 1980).

As stated above, plaintiff has sufficiently alleged the first element.  However, with regard to the remaining elements, she has alleged only that five people with less "seniority" than her were promoted to the position of Trainee, and that she was not.[42] Those allegations arguably satisfy the third element, rejection.  However, she has not directly alleged that she was qualified for the Trainee position, or that she applied for it.  Assuming that her seniority was sufficient to qualify her for the position, and even making the additional assumption that she applied for the position, plaintiff's failure to promote claim still fails; she has not alleged that the five employees who were promoted were not part of her protected class.  Plaintiff's failure to promote claim, premised on her exclusion from the Trainee position, would be viable only if the court were to assume that she was qualified for the position, that she applied for it, *and* that those who were chosen for promotion were not black.  That the court cannot do.  Even though plaintiff is not required to plead the elements of a *prima facie* case, here she has failed to allege sufficient facts to maintain her claim on the basis of her exclusion from the trainee promotions.

On the other hand, plaintiff has alleged that McCutcheon and Harvey, two white employees with the same responsibilities as her, received a pay raise that she did not.

---

[42] Doc. no. 3 ¶ 4.2.

14

That raise arguably could constitute a promotion, and provide another basis for her failure to promote claim. If the raise is considered a promotion, plaintiff has sufficiently alleged three of the four elements: membership in a protected class, rejection, and the promotion of a person outside the protected class. That leaves only the second element: that plaintiff was qualified for, and applied for, the position. That application prong of that element is not a rigid requirement: "where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position — only that the employer had some reason to consider him for the post." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005).

The "position" at issue here is a pay raise given to other hourly employees, but not to plaintiff. Such employees do not typically apply for wage increases, so plaintiff need not allege that she applied for a raise. Plaintiff alleged that she does "the same work" as those who received the pay raise.[43] She also stated that McClung told her that she did not receive a raise because she "complained to[o] much and had an argument with the Swing Manager, Veronica T[obert]."[44] McClung's explanation may

---

[43] EEOC Charge.

[44] Doc. no. 3 ¶ 4.4.

very well be a reasonable one, but that is not a question to be considered at this stage in the proceedings.  In light of the liberal construction the court must afford the pleadings of *pro se* parties, the court concludes that plaintiff has stated a viable failure to promote claim on the basis of the raises given to McCutcheon and Harvey, but not to her.

### 4.     Reduction in hours

A reduction in hours qualifies as an adverse employment action, because "a reduction in hours results directly in a reduction in pay." *Alexander v. Evening Shade, Inc.*, No. 3:09cv605–MHT, 2010 WL 3168132, at *3 (M.D. Ala. Aug. 10, 2010). Thus, plaintiff's allegation that her hours were reduced satisfies the adverse employment action element.  However, plaintiff has failed to allege that she was treated differently than similarly situated persons outside her protected class.  She stated that her hours were decreased, but has not alleged that the hours of similarly situated white coworkers have remained steady or increased.  Nor has she alleged that other black employees have had their hours reduced.  *Cf. Alexander*, 2010 WL 3168132, at *3-4 (finding disparate treatment where plaintiff could not identify any direct comparators, but other black workers had hours decreased, while white workers did not have hours decreased).  Simply put, plaintiff has failed to make any connection between her reduced work schedule and her race and, thus, has failed to allege racial

discrimination based on her reduction in hours.

### 5.     Request to transfer

Plaintiff alleges that McClung refused to help her obtain a release to transfer to a different McDonald's location.  That allegation does not establish a viable claim for employment discrimination.  Plaintiff has not made any allegation that McClung provided assistance in obtaining releases to white employees.  Nor has she even alleged that she was unable to get the transfer.  Even assuming that the transfer was refused, however, plaintiff's allegations would still fail to state a claim upon which relief can be granted.

In order for a refusal to grant an employee a requested transfer to constitute an adverse employment action, the position sought "must entail a serious and material change in the terms, conditions, or privileges of employment in order for a plaintiff to state a *prima facie* case of intentional discrimination."  *Smith v. Alabama Department of Corrections*, 145 F. Supp. 2d 1291, 1299 (M.D. Ala. 1999).  The *Smith* court explained that,

> [w]hile it logically may make sense to say that a denial of a transfer is an "adverse" action because it is not what the employee wished, such an action is no more "adverse," logically speaking, than a purely lateral transfer made against an employee's will, which the Eleventh Circuit has stated in [*Doe v.*] *Dekalb County* [*School District*, 145 F.3d 1441 (11th Cir. 1998)] does not necessarily rise to the level of an adverse employment action.

17

*Id.* (bracketed alterations supplied).

Plaintiff has not alleged that the transfer would have materially altered her employment for the better.  In fact, her allegation regarding the requested transfer provides no detail other than the location of the McDonald's to which she wanted to be transferred.[45]  She has failed to make allegations upon which the refusal to grant the transfer would constitute an adverse employment action and, thus, failed to state a claim upon which relief can be granted.

### 6.    Lack of communication with store manager

Plaintiff alleged that she and McClung do not communicate "at all."[46]  The alleged lack of communication cannot constitute a viable claim for three reasons. First, plaintiff has failed to allege that any similarly situated white employees are treated differently.   Second, she has not alleged that McClung's refusal to communicate with her has a "tangible, negative effect" on her employment.  *See Lucas*, 257 F.3d at 1261.  Finally, and perhaps most significantly, plaintiff's allegation that McClung does not communicate with her "at all" is directly contradicted by plaintiff's other allegations.  Plaintiff stated that she met with McClung to discuss the

---

[45] Doc. no. 3 ¶ 4.4.

[46] *Id.* ¶ 4.6.

fact that she had not received a pay raise, while other employees had.[47]  McClung also allegedly told plaintiff that she would not help plaintiff obtain a release for a transfer, and directed her to talk to another supervisor about the issue.[48]  The allegations in the complaint make it clear that plaintiff was not satisfied with the way McClung communicated with her, but they do not support her statement that there was no communication "at all."

**B.     Hostile Work Environment**

A *prima facie* racially hostile work environment case has five elements:  (1) the employee belongs to a protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon the employee's race; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and created a discriminatorily abusive working environment; and (5) the employer is responsible under a theory of either direct or vicarious liability.  *See, e.g., Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507 (M.D. Ala. 1994).

Only discussion of the fourth element — whether the alleged harassment was sufficiently severe or pervasive — is necessary to resolve the present motion.  The fourth element contains both an objective and subjective component.  To state an

---

[47] *Id.* ¶ 4.4.

[48] *Id.* ¶ 4.5.

actionable claim, a plaintiff must allege not just that he or she subjectively believed the environment to be hostile or abusive, but that a reasonable person also would perceive it as such.  *See, e.g., Harris v. Forklift Sytems, Inc.*, 510 U.S. 17, 21-22 (1993).  When evaluating the objective severity of the harassment, district courts must examine all of the circumstances, which may include such factors as:  the frequency of the discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and, whether the conduct unreasonably interfered with the plaintiff's work performance.  *Id.* at 23; *see also, e.g., Miller*, 277 F.2d at 1276; *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995).

"It is objectively unreasonable to believe that the use of racially discriminatory language on one occasion by one co-worker away from the workplace is enough to permeate the workplace with 'discriminatory intimidation, ridicule, and insult' and to 'alter the conditions of the victim's employment and create an abusive working environment.'" *Butler v. Alabama Dept. of Transportation.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002)).  Teasing, offhand comments, and isolated incidents that are not extremely serious will not amount to discriminatory changes in the terms and conditions of employment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (*en banc*).  For

20

example, "racial slurs allegedly spoken by coworkers had to be so 'commonplace, overt and denigrating that they created an atmosphere charged with racial hostility.'" *Edwards*, 49 F.3d at 1521 (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir.1990)).

Plaintiff alleges that Swing Manager Veronica Tobert referred to one of Tobert's family members as a "nigger-loving bitch!"[49]  The statement was made in the course of a conversation with another employee and not directed at plaintiff, although Tobert knew that plaintiff was present.[50]  Plaintiff has not alleged any other incidents of caustic racial language being used in the workplace, nor of any racial harassment actually being directed at her.

Plaintiff's allegation that McClung refuses to communicate provides another possible basis for a hostile work environment claim, but it also is insufficient to state a claim upon which relief can be granted.  Plaintiff alleges that when McClung wants plaintiff to do something at work, she tells a Swing Manager or another crew member to instruct plaintiff to do it.[51]  Assuming that McClung's alleged refusal to communicate directly constitutes harassment, plaintiff has made no allegation that the alleged harassment was based on race.  Moreover, although McClung's behavior could

---

[49] Doc. no. 3 ¶ 4.3.

[50] *Id.*

[51] *Id.* ¶ 4.6.

certainly be described as petty or immature, it does not rise to the level of severity necessary to maintain a hostile work environment claim.  Although she clearly appears to be subjectively offended by McClung's reticence, plaintiff has not alleged that the lack of communication has adversely affected her employment.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) ("Title VII[] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'").  Although McClung's refusal to address plaintiff may have been constant, there are no allegations suggesting that it was physically threatening, humiliating, or interfered with plaintiff's work performance.  Plaintiff has not alleged harassment that objectively is so severe and pervasive as to alter the terms and conditions of her employment and, thus, she has failed to state a claim upon which relief can be granted for hostile work environment.

## C.    Retaliation

As discussed in Part III.A.3 of this opinion, *supra*, plaintiff has failed to state a claim for disparate treatment based on her reduction in hours.  However, the reduction in hours also could form the basis of a retaliation claim.  A claim for retaliation has three elements:  (1) the plaintiff engaged in statutorily protected expression; (2) the plaintiff suffered an adverse employment action; and (3) there was a causal linkage between the protected conduct and the adverse employment action.

22

*See*, *e.g.*, *Shannon v. BellSouth Telecommunications, Inc.*, 292 F.3d 712, 715 (11th Cir. 2002). Statutorily protected activity includes formal actions, such as the filing of an EEOC charge. *See, e.g., Berman v. Orkin Exterminating Co*., 160 F.3d 697, 702 (11th Cir. 1998). Title VII also provides protection to those employees "who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. Florida Department of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989).

As stated in the discussion of plaintiff's disparate treatment claim, the reduction of her hours is an adverse employment action. In its motion to dismiss, defendant argues that plaintiff has made no allegation that she engaged in protected activity. However, plaintiff did allege that she complained to McClung because she had not received a pay raise.[52] As her EEOC charge makes clear, white employees doing the same work as her had received raises.[53] Plaintiff's complaint about her pay was implicitly a complaint about the fact that white employees received a pay raise that she did not and, therefore, was protected activity. Furthermore, plaintiff alleged that her reduction in hours was a response to her complaint about the raises.[54] Thus, she has

---

[52] Doc. no. 3 ¶ 4.4.

[53] EEOC Charge.

[54] *Id.*

23

alleged the causal linkage necessary to maintain a claim for retaliation.[55]

## IV.  CONCLUSION

For the reasons stated herein, defendant's motion to dismiss is GRANTED in part and DENIED in part.  An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE and ORDERED this 26th day of June, 2012.

_____
United States District Judge

---

[55] Plaintiff's allegation that her hours were increased to render her ineligible for unemployment benefits could be construed as another ground for a retaliation claim.  However, increasing her hours and, therefore, her pay, cannot reasonably be construed as an adverse *employment* action, as it would only serve to *improve* plaintiff's employment situation, regardless of the negative impact it may have had on plaintiff outside the workplace.

24